UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABIN'BOLA NELLAMS,

                           Plaintiff,

      v.

PACIFIC MARITIME ASSOCIATION, a
California non-profit corporation, *et al.*,

                         Defendants.

CASE NO. C17-911RSM

ORDER GRANTING DEFENDANT
SSA'S MOTION FOR SUMMARY
JUDGMENT

      This matter comes before the Court on Defendant SSA Marine, Inc. ("SSA")'s Motion
for Summary Judgment. Dkt. #88. Plaintiff Abin'Bola Nellams opposes. Dkt. #95. No party
requested oral argument. For the reasons stated below, the Court GRANTS this Motion.

## I.     BACKGROUND

      Mr. Nellams began working as a longshoreman in 1996 and is a member of ILWU local
19. Dkt. #96 at ¶ 1. (Declaration of Mr. Nellams). Mr. Nellams alleges that he has been subjected
to racial slurs and hostility from multiple supervisors while working for SSA, and has reported
multiple grievances following the procedures set forth in his Pacific Coast Longshore Contract
Document ("PCLCD") with "little to no action taken to address the complaints." *Id*. at ¶ 2; *see
also* Dkt. #52. The PCLCD is a collective bargaining agreement.

Defendant SSA operates several marine terminals employing longshoremen, marine clerks, and foremen to load and unload cargo from ships at the Port of Seattle. Dkt. #88 at 5. SSA is one of several companies operating on the waterfront. Dockworkers normally work for multiple employers interchangeably. Dkt. #78 (Declaration of Joseph T. Weber ("Weber Dec.")) at ¶ 10. There are three categories of dockworkers at the Port of Seattle: longshoremen, clerks, and "walking bosses" or foremen. *Id.* at ¶ 11. There are four levels of clerks. At the top are "Supercargos" and "Chief Supervisors" who supervise clerks of lesser rank. *Id.* "Clerk Supervisors" direct the work of clerks, telling them where to go and what to do. *Id.* They do not have authority to hire, discipline, or fire longshoremen. *See* Dkt. #81 Ex. A (Nellams' Deposition) at 26-28; Dkt.81, Ex. F (Anderson Deposition) at 8:7-9:12. Longshoremen perform the actual loading, unloading, and other movement of cargo. Marine clerks perform associated recordkeeping functions and ensure proper positioning of cargo. Walking bosses/foremen are direct supervisors of the dockworkers. All three are ILWU union-represented, although in different locals. *Id.* Dockworkers are ordered by the waterfront employers daily, and are supplied by a dispatcher at the union hall. *Id.* at ¶ 13. Dispatchers are elected by the union members. *Id.* Dockworkers can take a lesser position or be upgraded to a higher position if someone was ordered for that position but did not arrive. *Id.* at ¶ 13–14.

In 2012, SSA filed a complaint against Mr. Nellams for not showing up for work, although he was sick. SSA ultimately withdrew its complaint. *Id.* at ¶ 3. On October 4, 2014, he was sick again, made arrangements for a replacement worker, and SSA filed complaints that were later withdrawn. *Id.* at ¶ 4. Mr. Nellams alleges that SSA refused to pay him for 2.5 hours that he worked that day before calling in sick. *Id.* at ¶ 5.

On January 22, 2015, Mr. Nellams sustained an injury on the job that he reported to his supervisors. *Id*. at ¶ 7. He was told that if he decided to pursue medical treatment, he would be "fired." *Id*. In this industry, workers such as Mr. Nellams are "fired" when they are asked to leave their shift for the day, as opposed to having their employment terminated permanently. Weber Decl. ¶ 26.

On April 15, 2015, while working for SSA, Mr. Nellams' supervisor called him a "bastard" and gave him "undesirable work assignments." Dkt. #96 at ¶ 8. However, this supervisor was working for a different employer, TTI. *See* Dkt. #52 at ¶ 5.26.[1]

On April 23, 2016, SSA Supervisor Faron Fletcher called Mr. Nellams a "chicken eating, watermelon motherfucker" outside the presence of Mr. Nellams. Dkt. #96 at ¶ 10. This was quickly relayed to Mr. Nellams by his fellow workers. Mr. Nellams filed a grievance against Mr. Fletcher per the PCLCD. *Id*. On May 23, 2016, Mr. Nellams learned that Mr. Fletcher "was again saying bad things about [him] in front of my fellow workers" and "speaking about my prior grievances, which are supposed to be confidential." *Id*. at ¶ 11. Mr. Nellams reported these actions to SSA Foreman Steve Onion.

Mr. Fletcher was disciplined by SSA for his actions above. SSA "fired" Fletcher for the shift; later Fletcher's right to work for SSA was suspended for a year. Dkt. #79-8. Mr. Nellams also filed a grievance against Fletcher, resulting in more punishment: no dispatch to any work for any employer on the waterfront, for 90 days. Fletcher was also required to attend diversity training without pay. Dkt. #86. Mr. Nellams states "[h]e has not again used racially offensive language about me…. [h]owever he remains very hostile to me and does what he can as a

---

[1] This and his other claims against Total Terminals, International LLC ("TTI") have been voluntarily dismissed by Mr. Nellams. See Dkt. #70.

supervisor to make things difficult for me, and I find working on the dock with him very stressful." Dkt. #96 at ¶ 12. Mr. Nellams believes he is "not able to raise any complaints about him" given "the futility of past complaints." *Id*.

On November 27, 2016, an SSA supervisor allowed a Caucasian worker to leave work early "because she was driving heavy equipment position number one," yet the next day Mr. Nellams, who was working the same position, was not allowed to leave work early. *Id*. at ¶ 15. Mr. Nellams alleges further similar disparate treatment based on race. *See id*. at ¶¶ 17–20.

On June 13, 2017, Mr. Nellams filed a complaint against SSA and other waterfront employers that have since been dismissed. Dkt. #1. Mr. Nellams' Second Amended Complaints alleges racial discrimination in violation of the Washington State Law Against Discrimination, RCW 49.60.180 ("WLAD"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and in violation of 42 U.S.C. §1981; hostile work environment in violation of Title VII and WLAD; and retaliation in violation of Title VII and WLAD. Dkt. #52.

Based on the record, Mr. Nellams apparently continues to work as a longshoreman for SSA and other employers on the waterfront.[2]

## II.    DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[2] Mr. Nellams' Second Amended Complaint contains references to other incidents, however the Court finds they either fall outside the statute of limitations or implicate employers other than SSA. *See* Dkt. #52. The longest potentially applicable limitations period in this case is four years, 42 U.S.C. § 1981. Claims accruing before June 13, 2013, are barred by a four-year limitations period. Where shorter limitations apply, additional claims are barred. The events prior to June 13, 2013, in Mr. Nellams' Complaint are not part of a continuing violation because the actions involve different employers, different alleged wrongdoers, and unconnected situations. *See Clay v. Credit Bureau*, 54 F.3d 535, 539 (8th Cir. 2014).

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

Defendant SSA goes through the substantial allegations of incidents and grievances in the Second Amended Complaint, only some of which are detailed above, and concludes that, "[a]lthough Mr. Nellams' list of grievances seems long, aside from the Fletcher incident, his complaints against SSA boil down to a handful of routine dockside events, such as being sent home upon being replaced after arriving late for his shift or leaving early. Onsite discipline of this sort is commonplace on the waterfront." Dkt. #88 at 14. The Court agrees with this assessment.

**C. Disparate Treatment (First and Fourth Causes of Action)**

"When responding to a summary judgment motion . . . [the plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or

circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). Under *McDonnell Douglas*, Plaintiff must first establish the prima facie case that (1) he is a member of a protected class; (2) he was treated less favorably than an employee outside his protected class in the terms and conditions of his employment; and (3) the employee outside his protected class was similarly situated and doing substantially the same work. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Second, if Plaintiff is able to prove the prima facie case, the burden shifts to Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Finally, should Defendant carry this burden, Plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by Defendant were not its true reasons, but were a "pretext" for discrimination. *Id.* at 804.

In any event, a material adverse employment action is a required element of Mr. Nellams' prima facie case for disparate treatment and retaliation claims. *See Li Li Manatt v. Bank of America*, 339 F.3d 792, 800 (9th Cir. 2003) (Title VII and § 1981 retaliation claims). Without a material adverse action, a plaintiff is not entitled to relief. *Enowbitang v. Seagate Tech., Inc.*, 148 F.3d 970, 973-74 (8th Cir. 1998); *Burlington Northern v. White*, 548 U.S. 53, 68 (2006); *Sillars v. Nevada*, 385 Fed. Appx. 669 (9th Cir. 2010).

Adverse employment actions include significant changes in employment status, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellorin v. Applied Finishing, Inc.*, 996 F.Supp.2d 1070, 1093 (2014) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)). "A tangible employment action in most cases inflicts direct

economic harm." *Ellerth* at 762; *see also Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000) (no adverse employment action where the plaintiff "was not demoted, was not stripped of work responsibilities, was not handed different or more burdensome work responsibilities, was not fired or suspended, was not denied any raises, and was not reduced in salary or in any other benefit.").

Mr. Nellams' account of frustrating treatment by SSA does not add up to a single material adverse employment action. The Court agrees with SSA that those few instances where Mr. Nellams was "fired" from a shift for a day were not pretextual and were in fact based on legitimate nondiscriminatory reasons. No reasonable juror could conclude otherwise. This lack of adverse employment action is dispositive of these claims and of Mr. Nellams' retaliation claim (see Retaliation section below).

The Court notes that SSA presents evidence comparing discipline against Caucasian and African American dockworkers, and argues that there is "no record of disproportionate discipline of African American dockworkers for these types of infractions." Dkt. #88 at 14 (citing exhibits). SSA cites to *Anderson v. Pacific Maritime Ass'n and ILWU Local 23*, 2006 WL 3345255 (W.D. Wash. 2006) as a case on point. *Id*. at 16. The Court agrees with SSA that "Mr. Nellams can present no actual evidence—as distinguished from personal opinion—of uneven discipline motivated by race at the hands of SSA or in the Puget Sound ports generally." Dkt. #88 at 16.

**D. Retaliation Claim (Third Cause of Action)**

In addition to the above-discussed lack of adverse employment action, SSA argues Mr. Nellams cannot show a causal link between SSA-imposed discipline and any protected activity. SSA argues there is no temporal proximity between his grievances and the alleged retaliation, and that the record shows his grievances were in response to the alleged retaliation, not the reverse.

SSA argues that Mr. Nellams has to show that "his discrimination complaints caused actionable reprisals by SSA: that he was mistreated because he complained, not that he complained because he was mistreated." Dkt. #88 at 18 (citing *Manatt v. Bank of America*, 339 F.3d 792, 802 (9th Cir. 2003)). The Court again agrees with SSA's assessment of the undisputed factual record. Mr. Nellams does not discuss his retaliation claim in response to the instant Motion. *See* Dkt. #95. The Court will dismiss this claim as well.

## E. Hostile Work Environment Claims (Second and Fourth Causes of Action)

Mr. Nellams brings hostile work environment claims under Title VII, the WLAD, and § 1981. The Court agrees with SSA that "Mr. Nellams' complaints, except about Mr. Fletcher, are about commonplace, race-neutral events on the waterfront." Dkt. #88 at 15. Further, the actions of Mr. Nellams' coworkers cannot be imputed to SSA unless they are actions of a supervisor empowered to take tangible employment actions. *See Vance v. Ball State University*, 570 U.S. 421 (2013). Based on the entire record, the Court concludes Mr. Fletcher, as a "Clerk Supervisor," had no such authority over Mr. Nellams.

If the offender is not a supervisor, an employer is responsible for harassing conduct by its employees only if it authorized, knew, or should have known that the conduct was occurring and failed to take reasonably prompt and adequate corrective action. *See Washington v. Boeing*, 105 Wn. App. 1 (Div. I 2000); *Glasgow v. Georgia-Pacific*, 103 Wn.2d 401, 406-07 (1985); *Swenson v. Potter*, 271 F.3d 1184, 1191-98 (9th Cir. 2001). Based on the undisputed facts, the only actionable harassing conduct involving Mr. Nellams and SSA employees was responded to with prompt and adequate corrective action.

Isolated incidents of offensive remarks do not add up to an actionable hostile environment under federal or state law. *See Washington v. Boeing*, 105 Wn. App. at 13; *Harris v. Forklift*

*Systems, Inc.*, 510 U.S. 17, 21 (1993). Factors in determining whether hostile conduct is sufficiently severe or pervasive to constitute an actionable environment "include the frequency of the conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Other than Mr. Fletcher's comments, Mr. Nellams did not experience or hear any other comments related in any way to his race. *See* Dkt. #81 Ex. A (Nellams' Deposition) at 15:18-25, 19:15-17, 42:25-45:1, 53:4-57:6. There have been no further incidents between Mr. Nellams and Mr. Fletcher. Given all of the above, the Court concludes as a matter of law that Mr. Nellams cannot establish a hostile work environment existed. He has not experienced *pervasive* actionable hostile conduct, and the conduct of Mr. Fletcher was not sufficiently severe to be actionable under this theory—it was not threatening or made in his presence. For all of the above reasons, these hostile work environment claims are properly dismissed.

## III. CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendant SSA's Motion for Summary Judgment, Dkt. #88, is GRANTED. All of Plaintiff's remaining claims are DISMISSED. All other pending Motions are STRICKEN as MOOT. This case is CLOSED.

DATED this 19 day of November 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE